IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1889.

COMMONWEALTH EX REL. v. A. E. McCANDLESS.

APPEAL BY RELATOR FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 8, 1886—Decided November 15, 1886.*

1. The Court of Common Pleas of any county may by mandamus compel payment of a claim against the state, out of the state's funds in the hands of the county treasurer, when the relator shows a clear legal right, that he has no other adequate legal remedy, and that it is the clear legal duty of the respondent to make such payment: Per Ewing, P. J.
2. The act of April 22, 1846, P. L. 489, by fair implication conferred upon mercantile appraisers an authority to order publication of lists of persons assessed for mercantile taxes, except in the city and county of Philadelphia, and the cities of Pittsburgh and Allegheny: Per Ewing, P. J.
3. And the authority thus conferred upon the ·mercantile appraiser of Allegheny county was distinctly limited by said act to a list of mercantile dealers in the portions of the county outside the cities of Allegheny and Pittsburgh, and no other statute directly or indirectly enlarged this power: Per Ewing, P. J.
4. Whether, however, the mercantile appraiser has power to bind the state by any such publication whatsoever, since the act of April 11, 1862, P. L. 492, which, by directing personal notice to dealers over the state,

* Reported by request.

(492)

Statement of Facts.

has taken away all reason for the implied authority under the act of 1846, is doubted : Per Ewing, P. J.

5. At all events, the proprietor of a newspaper in which a list of all dealers in Allegheny county, including the cities of Pittsburgh and Allegheny, was published by order of the mercantile appraiser, may not by mandamus compel payment of any part of the bill for such publication, when it is not shown what part thereof is for the list of dealers outside said cities.

Before Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

No. 206 October Term 1886, Sup. Ct.; court below, No. 21 October Term 1885, C. P. No. 2.

On July 11, 1885, John E. Joos presented his petition to the Court of Common Pleas No. 2 of Allegheny county, setting forth that he was the publisher and proprietor of the Allegheny and Pittsburgh Sonntagsbote, a weekly newspaper printed, published and distributed upon Saturday of each week, in the city and county of Allegheny, and having a large and general circulation in said county and elsewhere ; that Lewis T. Brown, duly appointed and acting as appraiser of mercantile taxes, in and for the county of Allegheny, for the year 1885, prepared a list of dealers and persons liable for mercantile taxes in said year, and thereupon duly authorized petitioner to publish said list in his said newspaper for the year aforesaid ; that, by virtue of said authority, and upon the order in writing of said mercantile appraiser, petitioner published said list in his newspaper on the 18th and 25th days of April, 1885, and on the 2d and 9th days of May, 1885, being four weekly publications ; that said publications were made in the regular weekly editions of the newspaper and covered 1038 squares of printed matter, and that the petitioner was entitled to receive for the same $4,152, which sum did not exceed the regular published rates for transient advertising ; that said sum of money was justly due and unpaid, and said Lewis T. Brown, mercantile appraiser, on May 11, 1885, by writing under his hand, did order and direct the payment thereof; that petitioner presented to the treasurer of Allegheny county his said bill and claim, together with the order aforesaid, and a copy of the newspaper containing said publication, etc., and proofs of said publication conformably to the order of the appraiser, and demanded payment

of said $4,152, but that A. E. McCandless, treasurer of said county, without just cause or lawful excuse, refused to pay the same. The petitioner, further alleging that he had a clear legal right to receive and collect said sum of money, but no other adequate or specific legal remedy to enforce the payment of the same, prayed for a writ of mandamus, etc. Thereupon the court granted an alternative writ of mandamus, conformably to the prayer of the petitioner.

To this writ the defendant, A. E. McCandless, made answer:

1. That the Allegheny and Pittsburgh Sonntagsbote was a Sunday newspaper, dated as and purporting to be such, and circulated and distributed among and to its subscribers upon Sunday, and published, circulated and distributed to be sold on Sunday; that the publication of the mercantile appraiser's list therein was not a legal publication under the laws of the state pertaining to the publication of said list; that said appraiser had not authority to authorize the publication of the list in said newspaper, and said publication raised no legal liability upon respondent to pay for the same.

2. That payment for publishing the mercantile appraiser's list is made out of moneys of the state of Pennsylvania, when approved and directed by the auditor general; that publication of said lists is authorized in Allegheny county in three papers, one of which shall be a German paper, and that such publication had already been made in three newspapers published in Allegheny county, other than relator's paper, and payment made therefor, with the approval of the auditor general; that defendant received notice from the auditor general, soon after May 1, 1885, not to pay the relator's claim; that said claim had not been approved by the auditor general and the respondent could not pay it; that on May 5, 1885, the attorney general advised the auditor general that the publication of said list in a Sunday newspaper was illegal, that payment of the relator's claim should be refused, and that said list should be republished in another German newspaper, and such re-publication was made and paid for as aforesaid.

3. That this proceeding being to compel the respondent to pay moneys belonging to the state of Pennsylvania, it should, under the laws of the state, have been brought in the Court of Common Pleas of Dauphin county, where the seat of the state

government is, and this court had no jurisdiction to hear and determine the cause.

4. That the defence in this case was made under the instructions and by the authority of the auditor general, in the interests of the state.

The respondent therefore prayed to be dismissed with his reasonable costs.

Subsequently, by leave of the court, the defendant filed the following additional answer:

"The copies of the Allegheny and Pittsburgh Sonntagsbote, in which the mercantile appraiser's list is alleged to have been published on the 18th and 25th of April, and the 2d and 9th of May, 1885, were dated and some of them delivered by carriers and sold on the following days to each of said dates, which following days are Sundays, to wit, on the 19th and 26th days of April, and the 3d and 10th days of May, 1885, and the Allegheny and Pittsburgh Sonntagsbote, in which said lists were published, was and is a Sunday newspaper, dated, delivered, sold and read by its customers on Sunday."

Upon consideration of the said petition and answers, the court, Per Curiam, filed the following order: "The petition and answers raise an issue of fact as to the character of the newspaper in which it is alleged the mercantile appraiser ordered the list to be published. The other questions of law raised are not so clearly with either side of the contention, as to make it proper to decide the case until the questions of fact in dispute have been decided. It is therefore ordered that an issue be formed to try the disputed question of fact as preliminary to a final decision of the case."

Thereupon the relator filed a replication averring that the Sonntagsbote was not a Sunday newspaper, but was in fact issued and distributed upon Saturday of each week, and the publication of the appraiser's list therein was made upon weekdays and not upon Sundays; that the allegations of the relator's petition were true and each and every averment of the defendant's answers, inconsistent therewith, was incorrect. The defendant then joined issue upon the truth of the facts stated in his return.

The issue thus framed was tried on May 13, 1886, by a jury, who rendered the following special verdict:

Opinion of Court below.

" We find for the plaintiff subject to the opinion of the court on questions of law reserved, to wit, the questions raised by the allegations of fact and of law contained in the answer of the respondent and not denied in the replication of the relator, that is, all the statements of fact set forth in the answer except the allegation that the Sonntagsbote is a Sunday newspaper. We find that the said paper in which the mercantile appraiser's list was published is in fact not a Sunday newspaper, but is printed and circulated and intended as a weekly Saturday newspaper.

" If the court be of the opinion that the law is with the plaintiff, then judgment to be entered in favor of the plaintiff. If the court be of the opinion that the law is with the defendant, then judgment be entered in favor of the defendant, non obstante veredicto."

The court after argument entered judgment in favor of the defendant, that the petition of the relator be dismissed at his cost, non obstante veredicto, EWING, P. J., delivering the following opinion:

The pleadings in this case left but one question of fact in dispute, namely : The relator asserts that the Sonntagsbote, in which he published the mercantile appraiser's list for Allegheny county, is in fact printed, published and circulated on Saturday of each week. The defendant asserts that the Sonntagsbote is circulated on Sunday, and is in fact as well as in name a Sunday newspaper. Several questions of law are in dispute. The disputed question of fact has been submitted to a jury and the verdict is in favor of the relator. On this fact so found by the jury, and on the undisputed facts set forth in the pleadings, the court must now decide the question of the right of the relator to the peremptory writ of mandamus prayed for.

Lewis T. Brown was duly appointed mercantile appraiser for Allegheny county, and on April 4, 1885, he authorized the relator to publish in the Allegheny and Pittsburgh Sonntagsbote the mercantile appraiser's list for that year. The list was so published four times. This publication included the list for the entire county, including the cities of Pittsburgh and Allegheny. The charge for this publication is $4,152. The relator has filed with the defendant the statutory proof that this

price " does not exceed the regular published rates of the paper for transient advertising." The bill for this amount was approved by the mercantile appraiser and was presented for payment to the defendant, who, on the instruction of the auditor general, refused to pay it. A. E. McCandless, the defendant, was at the time and is now treasurer of Allegheny county.

The appraiser's list was published in two English papers, by order of the appraiser, and in one paper published in the German language, by order of the county treasurer, under instructions of the auditor general, and under the advice of the attorney general of the state. This last publication was after the publication of the list in relator's paper, and with full notice of the order of the mercantile appraiser to the relator to publish in his paper. The treasurer, by the approval of the auditor general, had paid for the publication of the list in these three papers before the beginning of the proceedings in this case. The refusal of the county treasurer to pay this claim is by direction of the auditor general.

At the threshold of the argument we are met with the objection that this court has no jurisdiction in the case; that, because the funds sought to be reached belong to the state, though in the hands of the county treasurer in accordance with law, the jurisdiction is in the Court of Common Pleas of Dauphin county, and this by virtue of the act of 1836 and the act of May 25, 1881, P. L. 32. If the relator has a clear legal right to the money in the hands of the county treasurer, and it be the clear legal duty of the treasurer to pay out this money, as a part of the cost of assessing and collecting it, before it reaches the state treasurer, the fact that it is state funds does not affect the jurisdiction. The acts of assembly were intended to give jurisdiction to the Common Pleas of Dauphin county only over state officers. We do not see that the act of 1881 has affected the jurisdiction in such a case as the present. Of course, if the approval of the auditor general is a prerequisite to the duty of the county treasurer to pay over, the jurisdiction is with the Dauphin county court to compel the auditor general to act.

To entitle the relator to the relief sought in this case he must show: 1. A clear legal right to payment of the claim from the fund sought to be reached. 2. That he has no other adequate legal remedy. 3. A clear legal obligation on the re-

spondent, officially, to pay the claim out of the state funds in his hands as collected from the mercantile taxes.

As to the second, we are unable to see what other adequate legal remedy the relator has.

As to the first ground: Had the mercantile appraiser the power to bind the state by making a contract for the publication?

The acts of assembly in relation to mercantile taxes are so numerous from 1821 to 1883 that it is difficult to determine precisely what parts of old acts are in force and what has been repealed.

By the sixth section of the act of March 4, 1824, 8 Sm. L. 202, it is made the duty of the county treasurer, in each county, to publish a list of all persons returned to him as retailing foreign merchandise, in two newspapers, if so many be published in the county.

By the act of April 7, 1830, P. L. 387, it is made the duty of the constables to return to the clerk of courts a list of all the dealers in merchandise in their districts. And by § 4 of the act, the associate judges and county commissioners were constituted a board to classify these dealers under the act, and also a board to hear appeals, and they are directed to give reasonable public notice of the time of hearing appeals.

The act of May 4, 1841, P. L. 307, has no provision in relation to publication of notice, but by resolution of the assembly dated March 18, 1840, P. L. 709, the clerk of the Court of Quarter Sessions of the county of Philadelphia is directed to publish a list of the names of dealers assessed for mercantile taxes, in at least three daily newspapers in the month of April.

By act of April 16, 1845, P. L. 533, the courts of Common Pleas of Allegheny and Philadelphia counties were directed to appoint an " Appraiser of Mercantile Taxes," to ascertain and assess all the dealers in accordance with the various acts of assembly. By the sixth section of the act, the appraiser is directed to furnish to each person and firm so assessed, a written or printed notice of his classification, giving notice to each, at the same time, of the place and time at which appeals may be made from such classification. No authority is given to the appraiser to make any publication of notice in a newspaper. This act appears to be the origin of the office of mercantile appraiser.

By § 12, act of April 22, 1846, P. L. 489, the fifth, sixth, seventh and eighth sections of the act of 1845 were extended to all the counties of the state, except that the appraiser is to be appointed by the county commissioners: "And provided that the written or printed notices required by the said sixth section (above quoted), to be furnished by the appraiser to the persons or firms assessed, shall only extend to the city and county of Philadelphia and to Allegheny city and the city of Pittsburgh, in the county of Allegheny; and the notices of the assessments made by the respective appraisers of the persons and firms within the other portions of the county of Allegheny, and within the remaining counties of the commonwealth, shall be given by at least four advertisements in at least two newspapers, if there shall be so many published in the proper county." The act is silent as to who shall order the publication, but by fair implication it is made the duty of the appraiser to furnish the list and order publication.

This is the first authority given to the appraiser either directly or indirectly to make any publication in a newspaper; and, as to Allegheny county, the authority is distinctly limited to the list of dealers in merchandise outside the cities of Pittsburgh and Allegheny. It is only authority to give notice to these dealers by publication, instead of the written personal notice required by the act of 1845. If there be any other act of assembly which directly or indirectly authorizes the appraiser of mercantile taxes to order the publication of a list of the persons and firms assessed in Allegheny county, or which extends or enlarges the power, the diligence of the learned counsel in this case and the researches of the court have failed to discover it.

In addition to the resolution of 1840, above referred to, there are subsequent acts of assembly directing publication of the list of dealers in Philadelphia county.

By act of March 15, 1847, P. L. 495, the commissioners of Allegheny county are given the appointment of the appraiser of mercantile taxes.

The act of April 11, 1862, P. L. 492, § 1, directed, "that it shall be the duty of the mercantile appraisers, in the several cities and counties of this state, personally to visit the store, . . . . . or other place of business of every person whom they

are required by law to ascertain and assess, and at the time of such visit to give to each such person living on the premises, a written or printed notice, specifying the classification and amount of license money to be paid by such person to the state, and also the time and place when and where he, the said appraiser, will hold an appeal as required by law." This would appear to be a repeal of the provision of the act of 1846, authorizing the giving of the notice "by publication in at least two newspapers." Standing alone it would certainly be a repeal of all authority in the appraiser to order a publication of the list for Allegheny county, in a newspaper.

The second section of the same act, however, directs that "the auditor general shall not allow for the advertising of the mercantile appraiser's list of the names and classification, in more than three papers in any city or county of this state, one of which shall be in the German language, if a paper be published in that language, in any city or county; nor shall such list be advertised in more than two papers in any county, should the auditor general require the county treasurer to limit the advertising to that number." This second section implies a supposed authority existing in at least a part of the state, for some officer to order the publication of the list. But it does not create or extend any such existing authority. It does seem to imply an authority existing in the county treasurer. Such authority did exist for the county of Philadelphia. The reason for the publication by the appraiser, as granted by implication in the act of 1846, is taken away, and no reason for its continuance exists.

The act of May 5, 1876, P. L. 109, provides that, "All newspapers publishing the mercantile appraiser's lists of dealers in the several counties of this commonwealth, according to the provisions of existing laws, shall be entitled to receive in consideration therefor, a sum not to exceed their regular published rates for transient advertising, and that the treasurers of the several counties of the commonwealth, in the settlement of their accounts with the auditor general, shall, in addition to the sums allowed them by law as compensation for their services, be allowed the sums so paid for advertising." This act gives no new or additional power to any officer to order the publication of the list. It is the act relied on by the relator as imposing

on the defendant the official duty to pay his bill for advertising.

The claim of the relator rests on the assumed power of the mercantile appraiser to bind the state by ordering the publication of the list in relator's paper. The list published and charged for is a complete list of all the persons and firms assessed in the entire county of Allegheny, including the cities of Pittsburgh and Allegheny. To each of these persons and firms the appraiser had already given a personal notice, if he obeyed the directions of the act of assembly. If he had power to order any publication, it was merely of the list of assessments outside the cities of Pittsburgh and Allegheny, probably not over one third of the list as published. The state is therefore not bound to pay the relator his claim as presented, and we have no means of ascertaining the proportion that would be charged for the list of dealers outside the cities.

We very seriously doubt the power of the mercantile appraiser of Allegheny county to bind the state by ordering any publication whatsoever. Whether or not any other officer has such power, we are not called upon to decide. We are by no means clear that it is the duty of the county treasurer to pay a bill of this character, even had it been duly contracted according to " existing statutes," against the direction of the auditor general, but it is not necessary to decide this question.

For the reasons above given, judgment must be given in favor of the defendant.

Thereupon the relator took this appeal, specifying that the court erred:

1. In entering judgment for the defendant, non obstante veredicto.[1]

2. In not entering judgment for the plaintiff.

*Mr. A. M. Brown* (with him *Mr. A. H. Moeser*), for the appellant:

1. All the laws of the state, pertinent or material to this controversy, are embraced in the following list of statutes: Section 6, act of March 4, 1824, 8 Sm. L. 202; §§ 2–7, act of April 17, 1830, P. L. 387; resolution of March 18, 1840, P. L. 709; act of April 16, 1845, P. L. 532; act of April 22, 1846, P. L. 489;

act of April 11, 1862, P. L. 492; act of May 5, 1876, P. L. 109. The act of May 4, 1841, P. L. 307, contains no provision touching the question in controversy here.   From an examination of the acts cited it will appear that from March 4, 1824, until the present time, the law has required the publication in newspapers of the lists of all persons and firms liable for mercantile taxes, in all the cities and counties of the commonwealth.

2. The duty of publishing such lists was originally devolved upon the treasurers of the cities and counties, by the act of 1824. The only change made by the resolution of 1840 was to enlarge the number of newspapers in which publication was to be made in Philadelphia, and the learned president judge is in error in saying that it directed the clerk of the Quarter Sessions of Philadelphia county to make that publication.   By fair and necessary implication, this duty devolved upon the mercantile appraiser when that office was created.   The act of 1845 directed the appointment of such an officer in Philadelphia and Allegheny counties; that he should assess all dealers, make a list of them, give a written or printed notice of the assessment to each person or firm living on the premises, and furnish the city or county treasurer and the auditor general with copies of the list.

3. The provisions of §§ 5–8 of the act of 1845 were extended to the other counties of the state by the act of 1846, which provided that the personal notices, prescribed by § 6 of the act of 1845, should extend only to the city and county of Philadelphia and the cities of Pittsburgh and Allegheny, and that in the other parts of Allegheny county, and in the other counties, the notice should be given by advertisement, etc.   It is said that this provision limits the list to be published in Allegheny county, to that of the dealers outside of the cities of Pittsburgh and Allegheny.   But no such result was intended.   The act certainly gives the appraiser power to order publication in at least two newspapers, and the intent of its provision limiting the personal notice to the cities named, is that dealers outside those cities shall have only the constructive notice by publication, while those in said cities shall have personal notice, in addition thereto, in the case of persons living on the premises.

4. The act of 1862 strengthens this view.   By it the appraiser is required to give a personal notice to each taxable living

on the premises. This enactment clearly embraces the whole state, but it does not dispense with the additional notice by publication. Moreover, § 2 expressly allows publication in three newspapers in any city or county, and the act of May 5, 1876, makes provision for the payment therefor. It appears from the defendant's answers that the attorney general and auditor general assert that publication in three newspapers in Allegheny county is required by law. It will thus be observed that the judgment against the relator not only was upon a question of law not raised by the pleadings, but actually was inconsistent with their concessions. In deciding against us the question raised by himself, we think the learned judge erred.

5. The relator has no remedy in this case except by mandamus. The mercantile appraiser is a county officer, and the court below clearly had jurisdiction to coerce him by mandamus : Section 18, act of June 14, 1836, P. L. 626. Mandamus is the proper remedy to compel a public officer to perform a public duty: Commonwealth v. Commissioners, 37 Pa. 237 ; Commonwealth v. Johnson, 2 Binn. 275 ; McManus v. School Controllers, 7 Phila. 23 ; Commonwealth v. Cochran, 1 S. & R. 473. It is the only remedy for the recovery of salary by a state officer. It lies to compel the payment of money due a public officer from the county treasury, and is the only remedy to compel payment for services rendered a municipality, to compensate for which a specific appropriation has been made by law : High on Extra. Rem., 253, 254.

*Mr. William A. Stone,* for the appellee :

The error assigned is to the entry of the judgment. If it was properly entered it should stand, although the reasons given for it by the court below are not such as this court would sustain. It could have been entered on the answers, as well as after the verdict.

1. The law does not authorize the publication of the appraiser's list within the cities of Pittsburgh and Allegheny. The act of April 16, 1845, P. L. 532, creating the office of mercantile appraiser in Allegheny and Philadelphia counties, does not authorize notice by publication, but provides another mode of notice to be given by the appraiser, and fixes his compensa-

tion for doing it. By necessary implication it thus repeals the resolution of March 18, 1840, P. L. 709, authorizing the treas-urer to give notice. The list that the appraiser is to prepare under § 1 of the act of 1845, is for the treasurer of the county, as provided by § 8. The first authority of the appraiser to give notice by publication is by the act of April 22, 1846, P. L. 489, but that is clearly limited to the portion of Allegheny county outside the cities of Pittsburgh and Allegheny; to them such an authority was never extended. This construction of the act of 1846 is entirely consistent with § 2, act of April 11, 1862, P. L. 492, and act of May 5, 1876, P. L. 109.

2. There is no legal authority for publishing the appraisers' lists in any portion of the state. The only notice ever directed for the three cities of Philadelphia, Pittsburgh and Allegheny, is the personal notice provided for by the act of 1846. Outside of these cities that act directed notice by publication and pro-vided for no further notice. The act of April 11, 1862, P. L. 492, enacted the rule of personal notice for the whole state, as a remedy for the inconvenience resulting from the fact that the publication did not always reach the parties to be affected by it with constructive notice. The remedy thus provided is act-ual personal notice, in lieu of the constructive notice. Publi-cation, therefore, would not now be notice; and if this be so, why is not the act of 1846 repealed by that of 1862? A sub-sequent affirmative statute, covering the same subject-matter and introducing a new rule as a substitute for that of a former statute, works a repeal thereof: Potter's Dwarris, 157, and note; Somerset and Stoystown Road, 74 Pa. 61; Johnston's Est., 33 Pa. 511.

3. These two acts of 1846 and 1862 cannot stand together; there are not two modes of service. The later act provides the necessary, exclusive, and only mode in which the notice can be served. The former act is therefore repealed: Erie v. Bootz, 72 Pa. 196; Nusser v. Commonwealth, 25 Pa. 126. It is true, § 2 of the act of 1862, without requiring publication assumes it to be necessary and limits it. But if not necessary, why should not the limitation fall with the assumption on which it rests? The acts of June 6, 1873, P. L. (1874) 407, and May 5, 1876, P. L. 109, do not direct publication, but rest upon the assump-tion that it is required by existing laws, which assumption is

without foundation, if the act of 1862 repealed that of 1846. For a reply to the assertion of the counsel on the other side that these questions were not raised by the answer, but by the court below, it is necessary only to read the clause in the answer denying the authority of the appraiser to order the publication of his list in the relator's paper.

4. Even if the law authorizes notice by publication, a publication in the relator's paper is not legal notice. The allegation that the papers were dated and some of them delivered and sold on Sunday, was not traversed, but stands an admitted fact in the case. The allegation that it was a Sunday newspaper was traversed and the jury were sworn to try that fact. In their verdict they did not find facts, but simply reached a conclusion. They concluded that the proprietor had made a mistake in calling his paper a Sunday paper (Sonntagsbote meaning in English, Sunday Messenger,) and that they would rectify the mistake by finding that a paper so named, dated on Sunday, in part delivered by carriers and sold on Sunday, and wholly read on Sunday, was not a Sunday paper, simply because it was worked off and delivered to the carriers between 6 and 10 o'clock on Saturday nights. We submit that the question was for the court, and that this is a Sunday newspaper, regardless of what a jury may think upon the subject.

5. A contract for the publication of an advertisement in a Sunday newspaper is void: Smith v. Wilcox, 24 N. Y. 353 (82 Am. Dec. 302); s. c. 19 Barb. 581, and 25 Barb. 341; Shaw v. Williams, 87 Ind. 158 (44 Am. Rep. 756). A contract made upon a week day to do an act on Sunday, prohibited by law, is void: Berrill v. Smith, 2 Miles 402. Notice in a Sunday newspaper is not legal notice: Scammon v. Chicago, 40 Ill. 146. If the court entered the proper judgment for another than the right reason, this court will not disturb it. The question whether the Court of Common Pleas of Dauphin county has sole jurisdiction, under the act of May 25, 1881, P. L. 32, is submitted without argument. Moreover, this claim being a disputed one, mandamus will not lie to compel its payment: Shell v. Dauphin Co., 1 Pears. 89; Hester's Case, 2 W. & S. 415. The amount must first be liquidated by a jury, where the claim is disputed: Commonwealth v. Commissioners, 16 S. & R. 317.

PER CURIAM:

We affirm this case on the opinion of the learned judge of the court below.

Judgment affirmed.